IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MARC JONES CONSTRUCTION, LLC,
d/b/a Sunpro or ADT Solar                                    PLAINTIFF

v.                          No. 4:22-cv-258-DPM

JUSTIN MORGAN;
DEMETRIUS WILLIAMS;
JERRY GIBSON;
CHASE GIBSON;  and
CORNERSTONE CONSTRUCTION
TEAM, LLC                                              DEFENDANTS

## ORDER

1.     Marc Jones Construction, LLC is a Louisiana-based
company that does business as Sunpro and ADT Solar.  Sunpro
provides residential and commercial solar energy systems to customers
in twenty-two states, including Arkansas.  Justin Morgan, Demetrius
Williams, Jerry Gibson, and Chase Gibson (all Arkansawyers) worked
for Sunpro as salesmen in Arkansas until February 2022.  None of them
worked for the company for more than two years.  All of them had sales
experience before joining Sunpro.  And all went on to work with Future
Home Power, LLC—a competing solar energy system provider—as
independent contractors soon after they left Sunpro.  Cornerstone
Construction Team, LLC is a South Carolina-based company that

works with Future Home Power to provide solar energy systems to customers in Arkansas and other states.

Sunpro sues the salesmen and Cornerstone for trade secret misappropriation under federal and state law, breach of contract, and intentional interference with a contract or business expectancy. It seeks a preliminary injunction to prevent ongoing and future misappropriations of its alleged trade secrets, and to enforce the employment agreements it had with the salesmen. The relief Sunpro originally requested, if granted, would compel the salesmen to quit their current jobs and to avoid working in the solar energy systems market in Arkansas and certain areas of twenty-one other states (and probably more) until February 2023 at the earliest.

Sunpro alleges that its video training library, "Sunlighten" proposal generating software, referral application, training methods, and customer data and sales strategies (including its zip-code level data on the most effective means of marketing its solar products) are trade secrets and, more generally, confidential information protected by the agreements the company made with its salespeople. The salesmen had access to all these materials, and the information the materials represent, while they worked for Sunpro. The company says Morgan still has access to an improperly acquired digital customer list and Williams still has access to marketing materials, which were improperly acquired, and a Sunpro-produced sales training

-2-

presentation.   The company also says that the salesmen would, if allowed to work for a competitor, inevitably and impermissibly use information they received in their training with the company.

Sunpro is entitled to injunctive relief if it has a fair chance of succeeding on the merits of its claims, and the balance of its own irreparable harm, when weighed against the potential harm to the salesmen and to the public, is in its favor.  *Progressive Technologies, Inc. v. Chaffin Holdings, Inc.*, No. 20-1474, 2022 WL 1297544, at \*2 (8th Cir. 2 May 2022);  *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc);  *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  The Court benefited from the evidence received, and the arguments made, at last week's hearing.

**2.**   The Court may enjoin the actual or threatened misappropriation of Sunpro's trade secrets.  18 U.S.C. § 1836(b)(3)(A); ARK. CODE ANN. § 4–75–604.  Sunpro seeks to protect two kinds of information as trade secrets.  First, Sunpro claims the customer list, marketing materials, and sales training presentation that Morgan and Williams allegedly acquired through improper means and currently have access to are tangible trade secrets.  Second, the salesmen's collective knowledge of Sunpro's training, sales, and marketing materials represents a host of intangible trade secrets that the company

says the salesmen have used or will inevitably use in their work for Future Home Power.

On the record presented, Sunpro has a fair chance of succeeding on the merits of its claim about Morgan's misappropriation of its customer list. The type of customer information Morgan sent to his personal email account warrants protection under state and federal law. *Vigoro Industries, Inc. v. Crisp*, 82 F.3d 785, 790 (8th Cir. 1996); *West Point Auto & Truck Center, Inc. v. Klitz*, 492 F. Supp. 3d. 936, 944–45 (D. Neb. 2020). It is likely the information was improperly acquired, or, in any event, Morgan's access to the information while working in direct competition with Sunpro poses a substantial threat of wrongful disclosure. Based on the excerpt of the list that was admitted into evidence, the Court estimates that Morgan has access to information about nearly 50,000 Sunpro customer leads. Misappropriation of that amount of proprietary customer information threatens irreparable harm. And Morgan conceded at the hearing that he would suffer no harm from a customer-list-specific injunction—he says he has never used the list and has no intention of doing so. On balance, the Court concludes that injunctive relief is appropriate as to the list.

Sunpro is not likely to succeed on the merits of any of its other trade secret claims. There is no proof that Cornerstone or the salesmen other than Morgan knew about or have access to the customer list. After having reviewed the training, marketing, and sales materials that

-4-

Sunpro seeks to protect as trade secrets, the Court finds that they aren't likely to merit protection under federal or state law. *MPAY Inc. v. Erie Custom Computer Applications, Inc.*, 970 F.3d 1010, 1016–17 (8th Cir. 2020); *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 421–23, 994 S.W.2d 468, 473–75 (1999). General information about how to pitch and sell a product, even a complicated one such as a solar energy system, in a given market is not typically the kind of information trade secret laws were meant to protect.

In addition, Sunpro's vice president of sales and operations testified that he did not believe the company would seek to prohibit the use of that information by former employees unless it resulted in direct competition where the company currently operates. And Sunpro routinely and by necessity discloses its sales techniques, sales scripts, and utility-related information to customers each time a salesperson uses them to make a sale. The company's regional sales manager confirmed that Sunpro expects its salespeople to adhere to the sales script in every sale. Cards must be held closer to the vest to secure the law's protection even if this information is otherwise protectable as trade secrets.

**3.** The salesmen each signed individual non-competition, non-solicitation, and non-disclosure agreements when they began working for Sunpro. *Doc. 3 at 66, 77, 88 & 99.* Those agreements broadly prohibit the salesmen from working as, for, or with a competitor of the company

and soliciting Sunpro's current and prospective customers, soliciting Sunpro's employees away from the company, and sharing Sunpro's confidential information outside the company. Sunpro claims the salesmen have violated each of these provisions.

Sunpro alleges and offers proof of the salesmen's ongoing violations of the noncompete provisions. Sunpro claims the provisions are enforceable as written; the salesmen say they aren't enforceable at all. To decide who is right, the Court must determine whether the agreements protect Sunpro's valid interests within a reasonable geographic scope and for a reasonable time. ARK. CODE ANN. § 4–75–101(a); *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, at *10, 381 S.W.3d 46, 53. To the extent necessary and practicable, the Court may reform the parties' agreements to make them reasonable. ARK. CODE ANN. § 4–75–101(f). As to Chase Gibson's contractual obligations, the parties agree that Texas law should yield the same results as Arkansas law.

The blue pencil is needed. Sunpro has a valid interest in protecting its customer base, leads, and referral pool. *Mounce v. Jeronimo Insulating, LLC*, 2021 Ark. App. 195, at *9–10, 625 S.W.3d 367, 373–74. The salesmen and Cornerstone don't dispute this except as to the referral pool. They say referrals from Sunpro customers they served reflect personal goodwill, not that of the company. The Court disagrees. Sunpro's interest in protecting its base of prospective customers extends to people who heard and hear about solar energy

systems from those who had business interactions with Sunpro employees. Referrals generally reflect confidence in a company's ability to provide a quality product or service. The level of confidence may be higher, or more solid, in a satisfied buyer than in a satisfied non-buyer, but both kinds of referrals rest on the same foundation of trust. Limiting these salesmen's ability to draw customers, leads, and known or reasonably ascertainable referrals from Sunpro for a period of one year within Arkansas and one hundred miles from anywhere they did business in Arkansas is reasonable. Preventing them from working for any amount of time as salesmen in the solar energy systems industry in more than twenty-two states is not. Sunpro's proof of virtual sales in other states from Arkansas fell short.

On this record, the Court finds that Sunpro has failed to demonstrate a fair chance of winning on any of its other breach-of-contract claims. The claims may be solid enough to proceed, but no proof has yet been offered that any of the defendants violated the non-disclosure or non-solicitation agreements they had with Sunpro.

\* \* \*

Sunpro's motion for a preliminary injunction, *Doc. 2*, is partly granted and partly denied. A preliminary injunction will issue.

So Ordered.

_____

D.P. Marshall Jr.
United States District Judge

16 May 2022